FILED BY __AW__ D.C.

**Jun 2, 2022**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
# 22-20236-CR-GAYLES/TORRES
Case No. _____

18 U.S.C. § 1349
18 U.S.C. § 1347
18 U.S.C. § 371
42 U.S.C. § 1320a-7b(b)(2)(B)
42 U.S.C. § 1320a-7b(b)(2)(A)
18 U.S.C. § 1956(h)
18 U.S.C. § 1957(a)
18 U.S.C. § 982(a)

**UNITED STATES OF AMERICA,**

**vs.**

**MILEIDY ROMERO TELLECHEA,**
**RIGOBERTO CORDERO, and**
**ISET YANES DOVAL,**

    **Defendants.**
_____/

## INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At all times material to this Indictment:

### The Florida Medicaid Program

1.    The Florida Medicaid Program (Medicaid) was a partnership between the State of Florida and the federal government that provided health care benefits to certain low-income individuals in Florida. The benefits available under Medicaid were governed by federal and state statutes and regulations. Medicaid was administered by the Centers for Medicare and Medicaid Services (CMS) and the State of Florida's Agency for Health Care Administration (AHCA).

Individuals who received benefits under Medicaid were commonly referred to as Medicaid "recipients."

2.      Medicaid was funded with both federal and state money and was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b) and a "Federal health care program" as defined by Title 42, United States Code, Section 1320a-7b(f).

3.      Health care providers seeking to bill Medicaid for the cost of healthcare benefits, items, and services were required to apply for and receive a "provider number." The provider number allowed a health care provider to submit bills, known as "claims," to Medicaid to obtain reimbursement for the cost of the health care benefits, items, and services provided to Medicaid recipients.

4.      Medicaid permitted these providers to submit claim forms electronically. The health insurance claim forms required the provider to provide certain important information, including: (a) the Medicaid recipient's name and identification number; (b) the identification number of the doctor or other qualified health care provider who ordered or provided the health care benefit, item, or service that was the subject of the claim; (c) the health care benefit, item, or service that was provided or supplied to the recipient; (d) the billing codes for the benefit, item, or service; and (e) the date upon which the benefit, item, or service was provided to or supplied to the recipient.

5.      When a claim was submitted to Medicaid, the provider certified that the contents of the form were true, correct, complete, and that the form was prepared in compliance with the laws and regulations governing the Medicaid program. The provider further certified that the services and health care items being billed were medically necessary and were in fact provided as

2

billed.

6.      Medicaid generally paid a substantial portion of the cost of the health care benefits, items, and services that were medically necessary, provided as claimed, and ordered by licensed doctors or other licensed, qualified health care providers. Payments were typically made directly to the health care provider rather than to the Medicaid recipient.

7.      Medicaid reimbursed providers for a type of mental health services called "psychosocial rehabilitation services" (PSR). PSR services consisted of mental health counseling to improve a recipient's ability to perform the activities of daily living or to improve their ability to perform a job while coping with their mental disorder. The mental disorders treated in this manner included, among other things, depression, and anxiety.

8.      Medicaid would reimburse the providers of PSR services, called "community behavioral health services providers," for performing an initial mental health evaluation, developing a treatment plan, and providing up to a maximum of 480 hours of medically necessary PSR services to a Medicaid recipient per year.

### The Defendants and Related Companies

9.      1st Class Mental Health Services, Corp (1st Class) was a Florida corporation located at 7392 NW 35 Terrace, Unit 205-206, Miami, Florida, purporting to provide PSR services.

10.     Eternity Community Mental Health, Corp (Eternity) was a Florida corporation located at 7570 NW 14th Street, Suite 101, Miami, Florida, purporting to provide PSR services.

11.     Defendant **MILEIDY ROMERO TELLECHEA** was a resident of Miami-Dade County and the sole officer and registered agent of 1st Class.

12.     Defendant **RIGOBERTO CORDERO,** husband to **MILEIDY ROMERO**

3

**TELLECHEA,** was a resident of Miami-Dade County and the sole officer and registered agent of Eternity.

13.     Defendant **ISET YANES DOVAL** was a resident of Miami-Dade County and the office manager of 1st Class.

## COUNT 1
### Conspiracy to Commit Health Care Fraud and Wire Fraud
### (18 U.S.C. § 1349)

1.     The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2.     From in or around April 2018, through the date of the return of this Indictment, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**MILEIDY ROMERO TELLECHEA,**
**RIGOBERTO CORDERO, and**
**ISET YANES DOVAL,**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate, and agree with each other, and with others known and unknown to the Grand Jury, to commit offenses against the United States, that is:

a.     to knowingly and willfully execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicaid, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347; and

b.     to knowingly and with the intent to defraud, devise and intend to devise a scheme

4

and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing the pretenses, representations, and promises were false and fraudulent when made, and for the purpose of executing the scheme and artifice, did knowingly transmit and cause to be transmitted by means of wire communication in interstate commerce, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

## Purpose of the Conspiracy

3.     It was a purpose of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by, among other things: (a) offering and paying kickbacks and bribes for the referral of Medicaid recipients to receive PSR and related services from 1st Class and Eternity that were medically unnecessary, ineligible for reimbursement, and not provided as represented; (b) offering and paying kickbacks and bribes to Medicaid recipients to induce the recipients to accept PSR services from 1st Class and Eternity that were medically unnecessary, ineligible for reimbursement, and not provided as represented; (c) submitting and causing the submission of false and fraudulent claims to Medicaid, via interstate wire communications, for PSR and related services that were medically unnecessary, ineligible for reimbursement, and not provided as represented; (d) concealing the submission of false and fraudulent claims to Medicaid and the receipt of the fraud proceeds; and (e) diverting fraud proceeds for their personal use and benefit, the use and benefit of others, and to further the fraud conspiracy.

## Manner and Means of the Conspiracy

The manner and means by which the defendants and their co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among other things, the following:

4.     **MILEIDY ROMERO TELLECHEA, RIGOBERTO CORDERO, ISET YANES DOVAL,** and others offered and paid kickbacks to patient recruiters for recruiting and referring Medicaid recipients to receive PSR and related services from 1st Class and Eternity that were medically unnecessary, ineligible for reimbursement and not provided as represented.

5.     **MILEIDY ROMERO TELLECHEA, RIGOBERTO CORDERO, ISET YANES DOVAL,** and others offered and paid kickbacks to Medicaid recipients for agreeing to accept PSR and related services from 1st Class and Eternity that were medically unnecessary, ineligible for reimbursement and not provided as represented.

6.     **MILEIDY ROMERO TELLECHEA, RIGOBERTO CORDERO** and others submitted and caused 1st Class and Eternity to submit false and fraudulent claims to Medicaid, via interstate wire communications, for PSR and related services that were medically unnecessary, ineligible for reimbursement and not provided as represented.

7.     As a result of such false and fraudulent claims, Medicaid made payments to the corporate bank accounts of 1st Class in the approximate sum of $9,969,470, and payments to the corporate bank accounts of Eternity in the approximate sum of $6,018,703.

8.     **MILEIDY ROMERO TELLECHEA, RIGOBERTO CORDERO, ISET YANES DOVAL,** and their co-conspirators used the proceeds of the health care fraud for their personal use and benefit, the use and benefit of others, and to further the fraud.

All in violation of Title 18, United States Code, Section 1349.

### COUNTS 2-9
### Health Care Fraud
### (18 U.S.C. § 1347)

1.     The General Allegations section of this Indictment is re-alleged and incorporated

by reference as if fully set forth herein.

2.      From in or around April 2018, through the date of the return of this Indictment, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**MILEIDY ROMERO TELLECHEA and
RIGOBERTO CORDERO,**

in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicaid, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of said health care benefit program.

### Purpose of the Scheme and Artifice

3.      It was the purpose of the scheme and artifice for the defendants and their accomplices to unlawfully enrich themselves by, among other things: (a) offering and paying kickbacks and bribes for the referral of Medicaid recipients to receive PSR and related services from 1st Class and Eternity that were medically unnecessary, ineligible for reimbursement, and not provided as represented; (b) offering and paying kickbacks and bribes to Medicaid recipients to induce the recipients to accept PSR and related services from 1st Class and Eternity that were medically unnecessary, ineligible for reimbursement, and not provided as represented; (c) submitting and causing the submission of false and fraudulent claims to Medicaid for PSR and related services that were medically unnecessary, ineligible for reimbursement, and not provided as represented; (d) concealing the submission of false and fraudulent claims to Medicaid and the

7

receipt of fraud proceeds; and (e) diverting fraud proceeds for their personal use and benefit, the use and benefit of others, and to further the fraud.

**The Scheme and Artifice**

4.      The Manner and Means section of Count 1 of this Indictment is realleged and incorporated by reference as though fully set forth herein as a description of the scheme and artifice.

**Acts in Execution or Attempted Execution of the Scheme and Artifice**

5.      On or about the dates set forth below, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants, **MILEIDY ROMERO TELLECHEA** and **RIGOBERTO CORDERO**, did knowingly and willfully execute, and attempt to execute, the above-described scheme and artifice to defraud a health care benefit program, in that the defendants, through 1st Class and Eternity, submitted and caused the submission of false and fraudulent claims to Medicaid seeking reimbursement for PSR and related services, as set forth below:

| Count | Approx. Date Claim Submitted | Medicaid Recipient | Provider | Claim Number | Billed Amount Qty. | Services Claimed; Billed Amount |
|---|---|---|---|---|---|---|
| 2 | 02/14/2019 | J.M. | 1st Class | 2219227014620 | 16 | H2017 - Psysoc Rehab Svc, Per 15 Min; $144 |
| 3 | 02/21/2019 | E.S. | 1st Class | 2219052017929 | 16 | H2017 - Psysoc Rehab Svc, Per 15 Min; $144 |
| 4 | 02/20/2020 | D.V. | Eternity | 2220051020841 | 16 | H2017 - Psysoc Rehab Svc, Per 15 Min; $144 |

8

| Count | Approx. Date Claim Submitted | Medicaid Recipient | Provider | Claim Number | Billed Amount Qty. | Services Claimed; Billed Amount |
|---|---|---|---|---|---|---|
| 5 | 03/05/2020 | S.G. | 1st Class | 2220065019559 | 16 | H2017 - Psysoc Rehab Svc, Per 15 Min; $144 |
| 6 | 05/28/2020 | L.M. | 1st Class | 2220149018976 | 16 | H2017 - Psysoc Rehab Svc, Per 15 Min; $144 |
| 7 | 08/06/2020 | O.H. | Eternity | 2220219019752 | 16 | H2017 - Psysoc Rehab Svc, Per 15 Min; $144 |
| 8 | 10/29/2020 | B.F. | Eternity | 2220303028733 | 16 | H2017 - Psysoc Rehab Svc, Per 15 Min; $144 |
| 9 | 01/07/2021 | I.H. | Eternity | 2221007023843 | 16 | H2017 - Psysoc Rehab Svc, Per 15 Min; $144 |

In violation of Title 18, United States Code, Sections 1347 and 2.

## COUNT 10
### Conspiracy to Pay Health Care Kickbacks
### (18 U.S.C. 371)

1.      The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2.      From in or around April 2018, through the date of the return of this Indictment, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**MILEIDY ROMERO TELLECHEA,
RIGOBERTO CORDERO, and
ISET YANES DOVAL,**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly, combine, conspire, confederate, and agree with each other, and with others known and unknown

9

to the Grand Jury, to commit offenses against the United States, that is:

(a)    to violate Title 42, United States Code, Section 1320a-7b(b)(2)(A), by knowingly and willfully offering and paying remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, to a person to induce such person to refer an individual to a person for the furnishing and arranging for the furnishing of any item or service for which payment may be made in whole and in part under a Federal health care program, that is, Medicaid; and

(b)    to violate Title 42, United States Code, Section 1320a-7b(b)(2)(B), by knowingly and willfully offering and paying remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind to a person to induce such person to purchase, order and arrange for and recommend purchasing and ordering, any good, facility, service, or item that may be paid for in whole or in part under a Federal health care program, that is, Medicaid.

### Purpose of the Conspiracy

3.    It was a purpose of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by: (a) offering and paying kickbacks and bribes to individuals in exchange for referring Medicare recipients to 1st Class and Eternity for PSR and related services; (b) offering and paying kickbacks and bribes to Medicaid recipients for receiving PSR services from 1st Class and Eternity; (c) submitting and causing the submission of claims to Medicaid for PSR and related services purportedly provided to the Medicaid recipients; (d) concealing the payment and receipt of the kickbacks; and (e) diverting the proceeds of the conspiracy for the defendants and co-conspirators' personal use, the use and benefit of others, and to further the conspiracy.

10

## Manner and Means of the Conspiracy

The manner and means by which the defendants and their co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among others, the following:

4.      **MILEIDY ROMERO TELLECHEA, RIGOBERTO CORDERO, ISET YANES DOVAL,** and others offered and paid kickbacks and bribes to Medicaid recipients in return for the recipients agreeing to receive PSR and related services from 1st Class and Eternity.

5.      **MILEIDY ROMERO TELLECHEA, RIGOBERTO CORDERO, ISET YANES DOVAL,** and others offered and paid kickbacks and bribes to patient recruiters for referring Medicaid recipients to 1st Class and Eternity for PSR and related services.

6.      **MILEIDY ROMERO TELLECHEA, RIGOBERTO CORDERO**, and co-conspirators caused 1st Class and Eternity to submit claims for PSR and related medical services purportedly provided to the recruited Medicaid recipients.

7.      **MILEIDY ROMERO TELLECHEA, RIGOBERTO CORDERO** and **ISET YANES DOVAL** used the proceeds of the kickback conspiracy to benefit themselves and others, and to further the conspiracy.

## Overt Acts

In furtherance of the conspiracy, and to accomplish its objects and purpose, at least one co-conspirator committed and caused to be committed, in the Southern District of Florida, at least one of the following overt acts, among others:

1.      On or about January 9, 2019, **MILEIDY ROMERO TELLECHEA** offered Individual 1 a cash kickback of $50 for each Medicaid recipient Individual referred to 1st Class to

receive PSR and related services. **TELLECHEA** also told Individual 1 that Medicaid recipients would receive a cash kickback of $20 per day for receiving PSR services at 1st Class.

2.      On or about January 28, 2019, **MILEIDY ROMERO TELLECHEA** offered Medicaid recipient J.M. a cash kickback of $20 per day, to be paid every 15 days, for receiving PSR services at 1st Class. **TELLECHEA** also offered J.M. a cash kickback of $50 for each Medicaid recipient J.M. referred to 1st Class to receive PSR services.

3.      On or about January 31, 2019, **MILEIDY ROMERO TELLECHEA** paid Individual 1 a cash kickback in the amount of $50 for referring Medicaid recipient J.M. to 1st Class to receive PSR services.

4.      On or about February 8, 2019, **MILEIDY ROMERO TELLECHEA** paid Individual 1 a cash kickback in the amount of $50 for referring Medicaid recipient E.S. to 1st Class.

5.      On or about February 22, 2019, **MILEIDY ROMERO TELLECHEA** paid Medicaid recipient J.M. a cash kickback in the amount of $160 in exchange for receiving PSR services at 1st Class.

6.      On or about February 22, 2019, **MILEIDY ROMERO TELLECHEA** paid Medicaid recipient E.S. a cash kickback in the amount of $200 for receiving PSR services at 1st Class.

7.      On or about March 18, 2019, **MILEIDY ROMERO TELLECHEA** offered Individual 2 a cash kickback of $50 for each Medicaid recipient Individual referred to 1st Class to receive PSR services. **TELLECHEA** also advised Individual 2 that Medicaid recipients would receive a cash kickback payment of $20 per day (or $25 per day if recipient drove themselves) for receiving PSR services at 1st Class.

12

8.      On or about April 10, 2019, **MILEIDY ROMERO TELLECHEA** offered Individual 2 a cash kickback of $100 for each Medicaid recipient Individual 2 referred to Eternity to receive PSR services.

9.      On or about June 23, 2021, an employee of 1st Class and Eternity, at the direction of **MILEIDY ROMERO TELLECHEA** and **RIGOBERTO CORDERO**, delivered cash kickback payments in amounts between $150 and $200 to Medicaid recipients D.V., B.F., M.M., S.G., F.G., L.M., I.H., and O.H., in exchange for receiving PSR services at 1st Class and Eternity.

10.     On or about October 14, 2021, an employee of 1st Class and Eternity, at the direction of **MILEIDY ROMERO TELLECHEA, RIGOBERTO CORDERO,** and **ISET YANES DOVAL,** delivered cash kickback payments in the amount of $150 to Medicaid recipients A.C., M.F., I.R., A.E., R.Y., M.G., N.G., N.O., L.J., R.O., and R.F. in exchange for receiving PSR services at 1st Class and Eternity.

11.     On or about May 12, 2022, **MILEIDY ROMERO TELLECHEA** paid Individual 3 a cash kickback in the amount of $400 for referring Medicaid recipients J.G., D.M., W.R., and D.R. to 1st Class.

All in violation of Title 18, United States Code, Section 371.

### COUNTS 11-21
**Payment of Kickbacks in Connection with a Federal Health Care Program**
**(42 U.S.C. § 1320a-7b(b)(2)(B))**

On or about the dates set forth below as to each count, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**MILEIDY ROMERO TELLECHEA and**
**RIGOBERTO CORDERO,**

did knowingly and willfully offer and pay any remuneration, including kickbacks and bribes,

directly and indirectly, overtly and covertly, in cash and in kind, to a person to induce such person

to purchase, order, and arrange for and recommend purchasing and ordering, any good, facility,

service, and item that may be paid for in whole and in part by a Federal health care program, that

is, Medicaid, as set forth below:

| Count | Medicaid Recipient | Approximate Date of Kickback Payment | Approximate Amount of Kickback Payment |
|-------|--------------------|--------------------------------------|----------------------------------------|
| 11 | J.M. | 2/22/2019 | $160 |
| 12 | E.S. | 2/22/2019 | $200 |
| 13 | D.V. | 6/23/2021 | $150 |
| 14 | B.F. | 6/23/2021 | $150 |
| 15 | S.G. | 6/23/2021 | $150 |
| 16 | L.M. | 6/23/2021 | $150 |
| 17 | I.H. | 6/23/2021 | $150 |
| 18 | O.H. | 6/23/2021 | $150 |
| 19 | A.C. | 10/14/2021 | $150 |
| 20 | M.F. | 10/14/2021 | $150 |
| 21 | I.R. | 10/14/2021 | $150 |

In violation of Title 42, United States Code, Section 1320a-7b(b)(2)(B) and Title 18,

United States Code, Section 2.

## COUNTS 22-23
### Payment of Kickbacks in Connection with a Federal Health Care Program
### (42 U.S.C. § 1320a-7b(b)(2)(A))

On or about the dates set forth below as to each count, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

### MILEIDY ROMERO TELLECHEA and
### RIGOBERTO CORDERO,

did knowingly and willfully offer and pay any remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, to a person to induce such person to refer an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part under a Federal health care program, that is, Medicaid, as set forth below:

| Count | Approximate Date of Kickback Payment | Approximate Amount of Kickback Payment |
|-------|--------------------------------------|----------------------------------------|
| 22 | 1/31/2019 | $50 |
| 23 | 2/8/2019 | $50 |

In violation of Title 42, United States Code, Section 1320a-7b(b)(2)(A) and Title 18, United States Code, Section 2.

### COUNT 24
### Conspiracy to Commit Money Laundering
### (18 U.S.C. § 1956(h))

1.     The General Allegations Section of this Indictment is realleged and incorporated by reference as if fully set forth herein.

2.      From in or around April 2018, and continuing through the date of the return of this Indictment, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**MILEIDY ROMERO TELLECHEA and
RIGOBERTO CORDERO,**

did knowingly and voluntarily combine, conspire, confederate and agree with each other, and with others known and unknown to the Grand Jury, to commit an offense under Title 18, United States Code, Section 1957, that is, to knowingly engage in a monetary transaction affecting interstate and foreign commerce by, through, and to a financial institution, in criminally derived property of a value greater than $10,000, such property being derived from specified unlawful activity, knowing that the property involved in the monetary transaction was derived from some form of unlawful activity.

It is further alleged that the specified unlawful activity is health care fraud, in violation of Title 18, United States Code, Section 1347; conspiracy to commit healthcare fraud, in violation of Title 18, United States Code, Section 1349; payment of kickbacks and bribes, in violation of Title 42, United States Code, Section 1320a-7b(b)(2)(A) and (b)(2)(B); and conspiracy to pay kickbacks and bribes, in violation Title 18, United States Code, Section 371.

All in violation of Title 18, United States Code, Section 1956(h).

**COUNTS 25-30**
**Money Laundering**
**(18 U.S.C. § 1957(a))**

On or about the dates as to each count set forth below, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**MILEIDY ROMERO TELLECHEA and**
**RIGOBERTO CORDERO,**

did knowingly engage and attempt to engage in a monetary transaction affecting interstate and

foreign commerce by, though, and to a financial institution, in criminally derived property of a

value greater than $10,000, and such property having been derived from specified unlawful

activity, knowing that the property involved in the monetary transaction was derived from some

form of unlawful activity, as set forth below:

| Count | Approx. Date of Transaction | Description of Monetary Transaction |
|---|---|---|
| 25 | 7/25/2019 | Deposit of check number 1174 in the amount of $45,000, drawn on account number ending in 6897 in the name of Eternity Community Mental Health Corp at JPMorgan Chase Bank, into account number ending in 5808 in the name of Romero Medical Consulting at JPMorgan Chase Bank |
| 26 | 9/5/2019 | Deposit of check number 5888 in the amount of $55,000, drawn on account number ending in 4542 in the name of 1st Class Mental Health Services Corp at Bank of America, into account number ending in 5808 in the name of Romero Medical Consulting at JPMorgan Chase Bank |
| 27 | 10/18/2019 | Deposit of check number 1088 in the amount of $70,000, drawn on account number ending in 4542 in the name of 1st Class Mental Health Services Corp at Bank of America, into account number ending in 8721 in the name of Family Transportation LLC at JPMorgan Chase Bank |
| 28 | 11/27/2019 | Deposit of check number 1435 in the amount of $40,000, drawn on account number ending in 6897 in the name of Eternity Community Mental Health Corp at JPMorgan Chase Bank, into account number ending in 8721 in the name of Family Transportation LLC at JPMorgan Chase Bank. |
| 29 | 5/15/2020 | Deposit of check number 1303 in the amount of $40,000, drawn on account number ending in 4542 in the name of 1st Class Mental Health Services Corp at Bank of America, into account number ending in 0205 in the name of Romero Medical Consultant LLC at Ocean Bank |
| 30 | 6/12/2020 | Deposit of check number 1091 in the amount of $35,000, drawn on account number ending in 0705 in the name of Eternity Community Mental Health Corp at Ocean Bank, into account number ending in 1505 in the name of Family Transportation LLC at Ocean Bank |

It is further alleged that the specified unlawful activity is health care fraud, in violation of Title 18, United States Code, Section 1347; conspiracy to commit healthcare fraud, in violation of Title 18, United States Code, Section 1349; payment of kickbacks and bribes, in violation of Title 42, United States Code, Section 1320a-7b(b)(2)(A) and (b)(2)(B); and conspiracy to pay kickbacks and bribes, in violation Title 18, United States Code, Section 371.

In violation of Title 18, United States Code, Sections 1957(a) and 2.

## FORFEITURE
### (18 U.S.C. § 982(a)(1) and (a)(7))

1.      The allegations in this Indictment are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of certain property in which the defendants, **MILEIDY ROMERO TELLECHEA, RIGOBERTO CORDERO**, and **ISET YANES DOVAL,** have an interest.

2.      Upon conviction of a violation of Title 42, United States Code, Section 1320a-7b(b)(2)(A)-(2)(B) and/or Title 18, United States Code, Section 1347, or a conspiracy to violate such offenses, as alleged in this Indictment, the defendant so convicted shall forfeit to the United States, any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of such violations, pursuant to Title 18, United States Code, Section 982(a)(7).

3.      Upon conviction of a violation of Title 18, United States Code, Section 1957, or a conspiracy to commit such an offense, as alleged in this Indictment, the defendant so convicted shall forfeit to the United States any property, real or personal, involved in such offense, and any property traceable to such property, pursuant to Title 18, United States Code, Section 982(a)(1).

4.      If any of the property described above, as a result of any act or omission of the

defendant:

      a.      cannot be located upon the exercise of due diligence;

      b.      has been transferred or sold to, or deposited with, a third party;

      c.      has been placed beyond the jurisdiction of the court;

      d.      has been substantially diminished in value; or

      e.      has been commingled with other property which cannot be divided
             without difficulty,

the United States shall be entitled to the forfeiture of substitute property under the provisions of

Title 21, United States Code, Section 853(p).

All pursuant to Title 18, United States Code, Sections 982(a)(1) and (a)(7), and the

procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 18,

United States Code, Section 982(b)(1).

A TRUE BILL

FOREPERSON

JUAN ANTONIO GONZÁLEZ
UNITED STATES ATTORNEY

CHRISTOPHER J. CLARK
ASSISTANT UNITED STATES ATTORNEY

19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.

Mileidy Romero Tellechea, et al.,

_____ Defendant.   /

CASE NO. ___22-20236-CR-GAYLES/TORRES_____

## CERTIFICATE OF TRIAL ATTORNEY*

**Superseding Case Information:**

Court Division: (Select One)

| | | |
|---|---|---|
| ✓ Miami | ___ Key West | New defendant(s)   Yes ___   No ____ |
| ___ FTL | ___ WPB   ___ FTP | Number of new defendants ___ |
| | | Total number of counts ___ |

1.  I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.  I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.  Interpreter:   (Yes or No)   Yes___
    List language and/or dialect   Spanish_____

4.  This case will take __14_ days for the parties to try.

5.  Please check appropriate category and type of offense listed below:

(Check only one)

| | | | | | |
|---|---|---|---|---|---|
| I | 0 to 5 days | _____ | Petty | | _____ |
| II | 6 to 10 days | _____ | Minor | | _____ |
| III | 11 to 20 days | ✓ | Misdem. | | _____ |
| IV | 21 to 60 days | _____ | Felony | | ✓ |
| V | 61 days and over | _____ | | | |

6.  Has this case previously been filed in this District Court?   (Yes or No)   No
    If yes: Judge _____   Case No. _____
    (Attach copy of dispositive order)
    Has a complaint been filed in this matter?   (Yes or No)   No___
    If yes: Magistrate Case No. _____
    Related miscellaneous numbers: _____
    Defendant(s) in federal custody as of _____
    Defendant(s) in state custody as of _____
    Rule 20 from the District of _____

    Is this a potential death penalty case? (Yes or No)   No___

7.  Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia O. Valle)?   Yes ___   No ✓

8.  Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)?   Yes ___   No ✓

9.  Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss)?   **Yes** ___   No ✓__

_____
CHRSITOPHER J. CLARK
ASSISTANT UNITED STATES ATTORNEY
FLORIDA BAR NO. 588040   REV 6/5/2020

*Penalty Sheet(s) attached

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

<u>PENALTY SHEET</u>

**Defendant's Name:**  MILEIDY ROMERO TELLECHEA

**Case No:**

Count #: 1

Conspiracy to Commit Health Care Fraud and Wire Fraud

Title 18, United States Code, Section 1349
**\* Max. Term of Imprisonment: 20 Years**
**\* Mandatory Min. Term of Imprisonment (if applicable): N/A**
**\* Max. Supervised Release: 3 years**
**\* Max. Fine:  $250,000 or twice the gross gain or loss from the offense**

Counts #:2-9

Health Care Fraud

Title 18. United States Code, Section 1347
**\* Max. Term of Imprisonment: 10 Years as to each count**
**\* Mandatory Min. Term of Imprisonment (if applicable): N/A**
**\* Max. Supervised Release: 3 years**
**\* Max. Fine: $250,000 or twice the gross gain or loss from the offense**

Count #: 10

Conspiracy to Pay Health Care Kickbacks

Title 18, United States Code, Section 371
**\* Max. Term of Imprisonment: 5 Years**
**\* Mandatory Min. Term of Imprisonment (if applicable): N/A**
**\* Max. Supervised Release: 3 years**
**\* Max. Fine: $250,000 or twice the gross gain or loss from the offense**

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

<u>PENALTY SHEET</u>

**Defendant's Name:**  MILEIDY ROMERO TELLECHEA

**Case No:**

Counts #: 11-21

<u>Payment of Kickbacks in Connection with a Federal Health Care Program</u>

<u>Title 42, United States Code, Section 1320a-7b(b)(2)(B)</u>
* **Max. Term of Imprisonment: 10 Years as to each count**
* **Mandatory Min. Term of Imprisonment (if applicable):**
* **Max. Supervised Release: 3 years**
* **Max. Fine: $250,000 or twice the gross gain or loss from the offense**

Counts #: 22-23

<u>Payment of Kickbacks in Connection with a Federal Health Care Program</u>

<u>Title 42, United States Code, Section 1320a-7b(b)(2)(A)</u>
* **Max. Term of Imprisonment: 10 Years Imprisonment as to each count**
* **Mandatory Min. Term of Imprisonment (if applicable): N/A**
* **Max. Supervised Release: 3 years**
* **Max. Fine: $250,000 or twice the gross gain or loss from the offense**

Count #: 24

<u>Conspiracy to Commit Money Laundering</u>

<u>Title 18, United States Code, Section 1956(h)</u>
* **Max. Term of Imprisonment: 10 Years**
* **Mandatory Min. Term of Imprisonment (if applicable): N/A**
* **Max. Supervised Release: 3 Years**
* **Max. Fine: $250,000 or twice the gross gain or loss from the offense**

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

<u>PENALTY SHEET</u>

**Defendant's Name:**  <u>MILEIDY ROMERO TELLECHEA</u>

**Case No:** _____

Counts #: 25-30

<u>Money Laundering</u>

<u>Title 18, United States Code, Section 1957(a)</u>
* Max. Term of Imprisonment: 10 Years as to each count
* Mandatory Min. Term of Imprisonment (if applicable): N/A
* Max. Supervised Release: 3 years
* Max. Fine:  $250,000 or twice the gross gain or loss from the offense

Count #:

_____

* Max. Term of Imprisonment:
* Mandatory Min. Term of Imprisonment (if applicable):
* Max. Supervised Release:
* Max. Fine:

Count #:

_____

* Max. Term of Imprisonment:
* Mandatory Min. Term of Imprisonment (if applicable):
* Max. Supervised Release:
* Max. Fine:

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

<u>PENALTY SHEET</u>

**Defendant's Name:**  RIGOBERTO CORDERO

**Case No:**

Count #: 1

Conspiracy to Commit Health Care Fraud and Wire Fraud

Title 18, United States Code, Section 1349
**\* Max. Term of Imprisonment: 20 Years**
**\* Mandatory Min. Term of Imprisonment (if applicable): N/A**
**\* Max. Supervised Release: 3 years**
**\* Max. Fine: $250,000 or twice the gross gain or loss from the offense**

Counts #:2-9

Health Care Fraud

Title 18. United States Code, Section 1347
**\* Max. Term of Imprisonment: 10 Years as to each count**
**\* Mandatory Min. Term of Imprisonment (if applicable): N/A**
**\* Max. Supervised Release: 3 years**
**\* Max. Fine: $250,000 or twice the gross gain or loss from the offense**

Count #: 10

Conspiracy to Pay Health Care Kickbacks

Title 18, United States Code, Section 371
**\* Max. Term of Imprisonment: 5 Years**
**\* Mandatory Min. Term of Imprisonment (if applicable): N/A**
**\* Max. Supervised Release: 3 years**
**\* Max. Fine: $250,000 or twice the gross gain or loss from the offense**

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include
restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:** RIGOBERTO CORDERO

**Case No:** _____

Counts #: 11-21

Payment of Kickbacks in Connection with a Federal Health Care Program

Title 42, United States Code, Section 1320a-7b(b)(2)(B)
* **Max. Term of Imprisonment: 10 Years as to each count**
* **Mandatory Min. Term of Imprisonment (if applicable): N/A**
* **Max. Supervised Release: 3 years**
* **Max. Fine: $250,000 or twice the gross gain or loss from the offense**

Counts #: 22-23

Payment of Kickbacks in Connection with a Federal Health Care Program

Title 42, United States Code, Section 1320a-7b(b)(2)(A)
* **Max. Term of Imprisonment: 10 Years Imprisonment as to each count**
* **Mandatory Min. Term of Imprisonment (if applicable): N/A**
* **Max. Supervised Release: 3 years**
* **Max. Fine: $250,000 or twice the gross gain or loss from the offense**

Count #: 24

Conspiracy to Commit Money Laundering

Title 18, United States Code, Section 1956(h)
* **Max. Term of Imprisonment: 10 Years**
* **Mandatory Min. Term of Imprisonment (if applicable): N/A**
* **Max. Supervised Release: 3 Years**
* **Max. Fine: $250,000 or twice the gross gain or loss from the offense**

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

<u>PENALTY SHEET</u>

**Defendant's Name**: _RIGOBERTO CORDERO_

**Case No**: _____

Counts #: 25-30

<u>Money Laundering</u>

<u>Title 18, United States Code, Section 1957(a)</u>
**\* Max. Term of Imprisonment: 10 Years as to each count**
**\* Mandatory Min. Term of Imprisonment (if applicable): N/A**
**\* Max. Supervised Release: 3 years**
**\* Max. Fine:  $250,000 or twice the gross gain or loss from the offense**

Count #:

_____

_____

**\* Max. Term of Imprisonment:**
**\* Mandatory Min. Term of Imprisonment (if applicable):**
**\* Max. Supervised Release:**
**\* Max. Fine:**

Count #:

_____

_____

**\* Max. Term of Imprisonment:**
**\* Mandatory Min. Term of Imprisonment (if applicable):**
**\* Max. Supervised Release:**
**\* Max. Fine:**

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include
restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

<u>PENALTY SHEET</u>

**Defendant's Name:** <u>ISET YANES DOVAL</u>

**Case No:** _____

Count #: 1

<u>Conspiracy to Commit Health Care Fraud and Wire Fraud</u>

<u>Title 18, United States Code, Section 1349</u>
* **Max. Term of Imprisonment: 20 Years**
* **Mandatory Min. Term of Imprisonment (if applicable): N/A**
* **Max. Supervised Release: 3 years**
* **Max. Fine:  S250,000 or twice the gross gain or loss from the offense**

Count #:10

<u>Conspiracy to Pay Health Care Kickbacks</u>

<u>Title 18. United States Code, Section 371</u>
* **Max. Term of Imprisonment: 5 Years**
* **Mandatory Min. Term of Imprisonment (if applicable): N/A**
* **Max. Supervised Release: 3 years**
* **Max. Fine: S250,000 or twice the gross gain or loss from the offense**

Count #:

_____

_____

* **Max. Term of Imprisonment:**
* **Mandatory Min. Term of Imprisonment (if applicable): N/A**
* **Max. Supervised Release: 3 years**
* **Max. Fine:**

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**